# **Exhibit L**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- X
                                        :
                                        :
PAULETTE RUBINSTEIN,                    :   CASE NO.: 19-CV-11187 (LJL) (JLC)
                                        :
        Plaintiff,                      :
                                        :   **PLAINTIFF'S FIRST SET OF**
     -against-                          :   **REQUESTS FOR ADMISSIONS**
                                        :
MUSIC SALES CORPORATION,                :
                                        :
        Defendant.                      :
                                        :
------------------------------------- X

    Plaintiff Paulette Rubinstein, by and through her undersigned counsel and pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure, requests that Defendant Music Sales Corporation respond, under oath and in accordance with the Definitions and Instructions set forth below, to the following Requests for Admissions ("RFAs" or "Requests") within thirty (30) calendar days of the date hereof, or within the time agreed by the parties or set by the court. Rubinstein reserves the right to propound additional Requests.

## **DEFINITIONS AND INSTRUCTIONS**

    The following Definitions and Instructions apply to each Request:

    1.    The terms defined in Local Civil Rule 26.3 are incorporated herein and have the meanings given them in that Rule.

    2.    The term "Rubinstein" means Plaintiff Paulette Rubinstein (a.k.a. Paulette Girard).

3. The term "Agent of Rubinstein" shall include all present or former agents, legal representatives, or other persons acting or purporting to act on her behalf, including without limitation Liane Curtis.

4. The terms "Defendant," "MSC," "You," or "Your" mean Defendant Music Sales Corporation including, where applicable, its officers, directors, and employees that may operate under a different trade name.  This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

5. "MSC Affiliate" means MSC's predecessors, corporate parent, subsidiaries, or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

6. The term "Composition" means the musical composition "If I'm Lucky (I'll Be the One)" that was authored, at least in part, by Rubinstein.

7. The term "Darwin" means Charles Darwin (a.k.a. Chuck Darwin).

8. The term "Agent of Darwin" includes all present or former agents, legal representatives, or other persons acting or purporting to act on behalf of Darwin.

9. The term "Litigation" means Civil Action No. 19-cv-11187, filed in the United States District Court for the Southern District of New York.

10. The term "First Amended Complaint" means ECF No. 25 in the Litigation.

11. The term "Answer" means ECF No. 34 in the Litigation.

12. The term "Harry Fox" means the Harry Fox Agency, Inc. and includes its predecessors, successors, affiliates, subsidiaries, divisions, parents, and each other person directly or indirectly, wholly or in part, owned or controlled by it, and all present or former

partners, principals, employees, officers, agents, legal representatives, consultants or other persons acting or purporting to act on its behalf.

13. The term "Valiant" means Valiant Music Co., Inc. and includes its predecessors, successors, affiliates, subsidiaries, divisions, parents, and each other person directly or indirectly, wholly or in part, owned or controlled by it, and all present or former partners, principals, employees, officers, agents, legal representatives, consultants or other persons acting or purporting to act on its behalf.

14. The term "Thornwood" means Thornwood Music Publishing Company and includes its predecessors, successors, affiliates, subsidiaries, divisions, parents, and each other person directly or indirectly, wholly or in part, owned or controlled by it, and all present or former partners, principals, employees, officers, agents, legal representatives, consultants or other persons acting or purporting to act on its behalf.

15. The term "Original Registration" means the United States initial copyright registration for the Composition, Registration Number EU 362-802, effective June 29, 1954.

16. The term "Record of Original Registration" means the U.S. Copyright Office public catalog record of the facts stated in the Original Registration as shown in Exhibit A to Rubinstein's First Amended Complaint and located at ECF No. 25-1.

17. The term "Renewal Registration" means the United States renewal copyright registration for the Composition, Registration Number RE 147-058.

18. The term "Record of Renewal Registration" means the U.S. Copyright Office public catalog record of the facts stated for RE 147-058 as shown in Exhibit C to Rubinstein's First Amended Complaint and located at ECF No. 25-3.

19.     The term "May 1961 Agreement" means the 1947 Revised Uniform Popular Songwriters Contract attached as Exhibit B to Rubinstein's First Amended Complaint, as shown in ECF No. 25-2.

20.     The term "March 1961 Agreement" means the assignment from Thornwood to Valiant of the Composition, which is reflected in the U.S. Copyright Office's public records as having a date of execution of March 9, 1961 and a date of recordation at the U.S. Copyright Office on May 15, 1961 at "Recorded vol. 1100, pp. 146."

21.     The term "1985 Agreement" means the assignment from Valiant to MSC of "Ask anyone in love & 25 other titles" including a musical composition entitled "If I'm Lucky I'll be" "By Chuck Darwin & Paulette Guard" which, according to the U.S. Copyright Office public record number V2156P508-510, had a date of execution of December 2, 1985 and a date of recordation at the U.S. Copyright Office on December 20, 1985.

22.     The term "1985 Vivan Evans Agreement" means the assignment from "Vivan Evans, Thomas Redd Evans, Jeffrey Redd Evans, Susan Redd Hansel & Nilene Redd Evans" to MSC of "American beauty rose & 66 other titles" which, according to the U.S. Copyright Office public record number V2156P522-531, had a date of execution of November 1, 1985 and a date of recordation at the U.S. Copyright Office on December 20, 1985.

23.     The term "1985 Redd Evans Agreement" means the assignment from "Redd Evans Music Company" to MSC of "American beauty rose & 82 other titles" which, according to the U.S. Copyright Office public record number V2156P498-507, had a date of execution of December 2, 1985 and a date of recordation at the U.S. Copyright Office on December 20, 1985.

24.     The term "HFA Green License" refers to the License No. 1306555490, dated May 26, 2017, issued to Kelly Green in connection with the album *Life Rearranged*, which is attached as Exhibit D to Rubinstein's First Amended Complaint, located at ECF No. 25-4.

25.     You must answer these Requests based on all information that is available to You, subject to reasonable inquiry by You, or within Your possession, custody or control—including, but not limited to, information in the possession of Your attorneys, actuaries, accountants, consultants or other advisors, as well as other persons directly or indirectly employed or engaged by or connected with You or Your attorneys, actuaries, accountants, consultants or other advisors, and anyone else otherwise subject to Your control.

26.     Your responses to each of these Requests must either admit, deny, or set forth in detail why You cannot truthfully admit or deny, the request for admission.

27.     Your responses to each of these Requests must fairly meet the substance of the requested admission.

28.     If You qualify Your answer to any of the Requests, or deny a portion of the requested admissions, You must specify the portion of the requested admission that is true before qualifying or denying the remainder.

29.     You may not give lack of information or knowledge as a reason for any failure to admit or deny any of these Requests, unless You state that You have made reasonable inquiry and that the information known or readily obtainable by You is insufficient to allow You to admit or deny the Request.

30.     To the extent You make any objection to any of these Requests, You must state with specificity all grounds on which the objection is based, and respond to so much of each such Request for admission to which no objection is made. State in full the part of the

Request objected to and set forth the grounds for each objection. If any objection on the grounds of vagueness, over-breadth, or any similar ground is made, You must respond to the Request for admission as narrowed to conform to Your objection.

31. If You contend that any of the requested information is protected by the attorney-client privilege, work product doctrine, or any other privilege or protection from disclosure, please identify the nature of the privilege and provide a concise statement of the grounds upon which the claim of privilege is asserted.

32. These Requests shall be deemed to be continuing so that any additional information responsive to these Requests which You may acquire, or which may become known to You, shall be furnished to Plaintiff within a reasonable time as required by Federal Rule of Civil Procedure 26(e).

**REQUESTS FOR ADMISSION**

REQUEST NO. 1:   Admit that Rubinstein and Darwin are identified as the authors of the Composition in the Record of Original Registration.

REQUEST NO. 2:   Admit that only Thornwood is identified as a copyright owner in the Record of Original Registration.

REQUEST NO. 3:   Admit that neither MSC nor any MSC Affiliate has seen any document concerning an assignment of copyrights in the Composition from Rubinstein or Darwin to Thornwood.

REQUEST NO. 4:   Admit that neither MSC nor any MSC Affiliate has a copy of any assignment of copyrights in the Composition from Rubinstein or Darwin to Thornwood.

REQUEST NO. 5:   Admit that Rubinstein and Darwin are identified as the authors of the Composition in the Record of Renewal Registration.

REQUEST NO. 6:   Admit that MSC does not contest the validity of the Original Registration.

REQUEST NO. 7:   Admit that MSC does not contest the validity of the Renewal Registration.

REQUEST NO. 8:   Admit that neither MSC nor any MSC Affiliate is aware of any copyright registration for the Composition in the United States other than the Original Registration and the Renewal Registration.

REQUEST NO. 9:   Admit that neither MSC nor any MSC Affiliate is aware of any copyright registration for the Composition issued by any government agency outside of the United States.

REQUEST NO. 10: Admit that the Composition would have fallen into the public domain in the United States if a renewal registration had not been obtained for the Composition in accordance with 17 U.S.C. § 304.

REQUEST NO. 11: Admit that MSC never owned any U.S. copyrights in the Composition.

REQUEST NO. 12: Admit that no MSC Affiliate ever owned any U.S. copyrights in the Composition.

REQUEST NO. 13: Admit that on January 1, 1983, the U.S. renewal term copyright in the Composition vested in Rubinstein and Darwin pursuant to 17 U.S.C. §304(a)(2)(B).

REQUEST NO. 14: Admit that neither MSC nor any MSC Affiliate is aware of any assignment by Rubinstein or Darwin of the U.S. renewal term copyright in the Composition on or after January 1, 1983.

REQUEST NO. 15: Admit that neither MSC nor any MSC Affiliate is aware of any assignment by any Agent of Rubinstein or Agent of Darwin of the U.S. renewal term copyright in the Composition on or after January 1, 1983.

REQUEST NO. 16: Admit that neither MSC nor any MSC Affiliate is aware of any reason to contest the accuracy of the U.S. Copyright Office record of the March 1961 Agreement.

REQUEST NO. 17: Admit that neither MSC nor any MSC Affiliate is aware of any assignment by Thornwood of any copyrights in the Composition other than the March 1961 Agreement.

REQUEST NO. 18: Admit that the May 1961 Agreement is a true and correct copy of that agreement.

REQUEST NO. 19:   Admit that neither MSC nor any MSC Affiliate is aware of any document, communication, or other record indicating that, on or after May 8, 1961, Rubinstein or Darwin offered to sell or assign to any person, other than Valiant, any rights in the U.S. renewal copyright in the Composition or any rights in the Composition in the United States or outside the United States for the period after the original term of the U.S. copyright.

REQUEST NO. 20:   Admit that neither MSC nor any MSC Affiliate is aware of any document, communication, or other record indicating that, between May 8, 1961 and December 31, 1982, Rubinstein or Darwin sold or assigned to any person any rights in the U.S. renewal copyright in the Composition or any rights in the Composition in the United States or outside the United States for the period after the original term of the U.S. copyright.

REQUEST NO. 21:   Admit that neither MSC nor any MSC Affiliate is aware of any document, communication, or other record indicating that Rubinstein or Agent of Rubinstein entered into any assignment or license of copyrights in the Composition with Valiant other than the May 1961 Agreement and the March 1961 Agreement.

REQUEST NO. 22:   Admit that neither MSC nor any MSC Affiliate is aware of any document, communication, or other record indicating that Darwin or Agent of Darwin entered into any assignment or license of copyrights in the Composition with Valiant other than the May 1961 Agreement and the March 1961 Agreement.

REQUEST NO. 23:   Admit that the 1985 Agreement did not assign to MSC Valiant's entire catalog of musical compositions, meaning every musical composition for which Valiant owned any copyrights.

REQUEST NO. 24:   Admit that, on or after January 1, 1983, MSC did not acquire the copyrights to Valiant's entire catalog of musical compositions, meaning every musical composition for which Valiant owned any copyrights.

REQUEST NO. 25:   Admit that neither MSC nor any MSC Affiliate purchased Valiant's entire music business pursuant to the 1985 Agreement.

REQUEST NO. 26:   Admit that neither MSC nor any MSC Affiliate purchased Valiant's entire music business pursuant to the 1985 Vivan Evans Agreement.

REQUEST NO. 27:   Admit that neither MSC nor any MSC Affiliate purchased Valiant's entire music business pursuant to the 1985 Redd Evans Agreement.

REQUEST NO. 28:   Admit that, on or after January 1, 1983, MSC did not purchase Valiant's entire music business.

REQUEST NO. 29:   Admit that, on or after January 1, 1983, MSC was never a subsidiary or affiliate of Valiant.

REQUEST NO. 30:   Admit that, on or after January 1, 1983, Valiant never merged or consolidated into MSC.

REQUEST NO. 31:   Admit that neither MSC nor any MSC Affiliate is aware of any document other than the Original Registration, Renewal Registration, March 1961 Agreement, May 1961 Agreement, and the 1985 Agreement that are relevant to MSC's claim of ownership of the copyrights in the Composition outside the United States and Canada.

REQUEST NO. 32:   Admit that the HFA Green License is a true and correct copy of License No. 1306555490 issued by Harry Fox at the direction of MSC on or after December 6, 2016.

REQUEST NO. 33:   Admit that MSC or an MSC Affiliate received royalties in connection with mechanical licenses for the Composition in the United States on or after December 6, 2016.

REQUEST NO. 34:   Admit that MSC or an MSC Affiliate received royalties in connection with the reproduction, distribution, public performance, public display, synch, and/or derivative use of the Composition in the United States on or after December 6, 2016.

REQUEST NO. 35:   Admit that neither MSC nor an MSC Affiliate distributed to Rubinstein or any Agent of Rubinstein royalties received in connection with the reproduction, distribution, public performance, public display, synch, mechanicals, and/or derivative use of the Composition in the United States on or after December 6, 2016.

REQUEST NO. 36:   Admit that between December 6, 2016 and August 28, 2018, MSC or an MSC Affiliate was identified in the ASCAP Repertory as the person controlling the publisher's share of the U.S. copyright in the Composition.

REQUEST NO. 37:   Admit that on or after December 6, 2016, MSC or an MSC Affiliate was and continues to be identified as the person controlling 100% of the copyrights in the Composition outside the United States and Canada for the purposes of collecting public performance royalties through ASCAP's affiliation with licensing organizations outside the United States and Canada.

REQUEST NO. 38:   Admit that on or after December 6, 2016 MSC was identified in Harry Fox's copyright ownership records for the Composition as the person controlling the U.S. copyrights in the Composition.

REQUEST NO. 39: Admit that on or after August 1, 2018, MSC or an MSC Affiliate informed Harry Fox that MSC did not control the copyright in the Composition in the United States.

REQUEST NO. 40: Admit that on or after April 1, 2020, MSC or an MSC Affiliate informed ASCAP that MSC did not control the copyright in the Composition for the United States.

REQUEST NO. 41: Admit that on or after January 1, 1983, MSC did not obtain an express license from Rubinstein or Agent of Rubinstein to reproduce, distribute, publicly perform, publicly display, synch, and/or create derivatives of, or authorize third parties to reproduce, distribute, publicly perform, publicly display, synch, and/or create derivatives of the Composition in the United States.

REQUEST NO. 42: Admit that on or after January 1, 1983, MSC did not obtain an express license from Darwin or Agent of Darwin to reproduce, distribute, publicly perform, publicly display, synch, and/or create derivatives of, or authorize third parties to reproduce, distribute, publicly perform, publicly display, synch, and/or create derivatives of the Composition in the United States.

REQUEST NO. 43: Admit that on or after January 1, 1983, MSC did not obtain an express license from Rubinstein, Agent of Rubinstein, Darwin, or Agent of Darwin to reproduce, distribute, publicly perform, publicly display, synch, and/or create derivatives of, or authorize third parties to reproduce, distribute, publicly perform, publicly display, synch, and/or create derivatives of the Composition outside the United States.

REQUEST NO. 44: Admit that on or after January 1, 1983, MSC did not obtain an implied license from Rubinstein, Agent of Rubinstein, Darwin, or Agent of Darwin to reproduce,

distribute, publicly perform, publicly display, synch, and/or create derivatives of, or authorize third parties to reproduce, distribute, publicly perform, publicly display, synch, and/or create derivatives of the Composition in the United States.

REQUEST NO. 45:   Admit that on or after January 1, 1983, neither MSC nor an MSC Affiliate obtained an implied license from Rubinstein, Agent of Rubinstein, Darwin, or Agent of Darwin to reproduce, distribute, publicly perform, publicly display, synch, and/or create derivatives of, or authorize third parties to reproduce, distribute, publicly perform, publicly display, synch, and/or create derivatives of the Composition outside the United States.

REQUEST NO. 46:   Admit that on or after December 2, 1985, MSC entered into one or more verbal or written agreements authorizing MSC Affiliates to authorize third parties to reproduce, distribute, publicly perform, publicly display, synch, and/or create derivatives of the Composition outside the United States.

REQUEST NO. 47:   Admit that on or after December 2, 1985, MSC entered into one or more verbal or written agreements with one or more collective licensing organizations outside the United States authorizing reproduction, distribution, public performance, public display, synch, mechanical, and/or derivative use of the Composition outside the United States.

REQUEST NO. 48:   Admit that on or after December 2, 1985, an MSC Affiliate entered into one or more verbal or written agreements with one or more collective licensing organizations outside the United States authorizing reproduction, distribution, public performance, public display, synch, mechanical, and/or derivative use of the Composition outside the United States.

REQUEST NO. 49: Admit that MSC or an MSC Affiliate received royalties in connection with the reproduction, distribution, public performance, public display, synch, mechanical, and/or derivative use of the Composition in Canada on or after December 6, 2016.

REQUEST NO. 50: Admit that MSC or an MSC Affiliate received royalties in connection with the reproduction, distribution, public performance, public display, synch, mechanical, and/or derivative use of the Composition in one or more countries other than the United States and Canada on or after December 6, 2016.

Dated: April 12, 2021                              Respectfully submitted,

                                                            By: /s/ *Rachel E. Fertig*
Rachel E. Fertig
J. Kevin Fee
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue NW
Washington, DC 20004
Telephone: 202-739-3000
rachel.fertig@morganlewis.com
kevin.fee@morganlewis.com

Michael S. Kraut
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
Telephone: 221-309-6000
Michael.kraut@morganlewis.com

*Counsel for Plaintiff Paulette Rubinstein*

## CERTIFICATE OF SERVICE

I hereby certify that on April 12, 2021, a true and accurate copy of the foregoing document was served on counsel for Music Sales Corporation by emailing a copy to:

Timothy M. O'Donnell
odohmnail@aol.com

/s/ *Rachel E. Fertig*
Rachel E. Fertig