# **Exhibit M**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

\- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

PAULETTE RUBINSTEIN,

              Plaintiff,

    -against-

MUSIC SALES CORPORATION,

              Defendant.

\- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

CASE NO.: 19-CV-11187 (LJL) (JLC)

**PLAINTIFF'S SECOND SET OF INTERROGATORIES**

Plaintiff Paulette Rubinstein, by and through her undersigned counsel, hereby requests that Defendant Music Sales Corporation answer the following Interrogatories under oath in accordance with Rule 33 of the Federal Rules of Civil Procedure.  Plaintiff's First Set of Interrogatories served on October 12, 2020 were limited to Local Rule 33.3(a) interrogatories. Plaintiff's Second Set of Interrogatories are limited to the 15 total Local Rule 33.3(b) and 33.3(c) interrogatories allowed pursuant to ECF No. 48.

<u>**DEFINITIONS AND INSTRUCTIONS**</u>

The following Definitions and Instructions apply to each Interrogatory:

1.      The terms defined in Local Civil Rule 26.3 are incorporated herein and have the meanings given them in that Rule.

2.      The term "Rubinstein" means Plaintiff Paulette Rubinstein (a.k.a. Paulette Girard) and shall include all present or former agents, legal representatives, or other persons acting or purporting to act on her behalf, including without limitation Liane Curtis.

3.      The terms "Defendant," "MSC," "You," or "Your" mean Defendant Music Sales Corporation including, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

4.      The term "Composition" means the musical composition "If I'm Lucky (I'll Be the One)" that was authored, at least in part, by Rubinstein.

5.      The term "Darwin" means Charles Darwin (a.k.a. Chuck Darwin) and includes all present or former agents, legal representatives, or other persons acting or purporting to act on his behalf.

6.      The term "Litigation" means Civil Action No. 19-cv-11187, filed in the United States District Court for the Southern District of New York.

7.      The term "First Amended Complaint" means ECF No. 25 in the Litigation.

8.      The term "Answer" means ECF No. 34 in the Litigation.

9.      The term "Valiant" means Valiant Music Co., Inc. and includes its predecessors, successors, affiliates, subsidiaries, divisions, parents, assignees, joint ventures, and each other person directly or indirectly, wholly or in part, owned or controlled by it, and all present or former partners, principals, employees, officers, agents, legal representatives, consultants or other persons acting or purporting to act on its behalf.

10.     The term "Thornwood" means Thornwood Music Publishing Company and includes its predecessors, successors, affiliates, subsidiaries, divisions, parents, and each other person directly or indirectly, wholly or in part, owned or controlled by it, and all present or former partners, principals, employees, officers, agents, legal representatives, consultants or other persons acting or purporting to act on its behalf.

-2-

11.     The term "Agreement" means the 1947 Revised Uniform Popular Songwriters Contract attached as Exhibit B to Rubinstein's First Amended Complaint, located at ECF No. 25-2.

12.     The term "March 1961 Agreement" means the assignment from Thornwood to Valiant of the Composition, which is reflected in the U.S. Copyright Office's public records as having a date of execution of March 9, 1961 and a date of recordation at the U.S. Copyright Office on May 15, 1961 at "Recorded vol. 1100, pp. 146."

13.     The term "1985 Agreement" means the assignment from Valiant to MSC of "Ask anyone in love & 25 other titles" including a musical composition entitled "If I'm Lucky I'll be" "By Chuck Darwin & Paulette Guard" which, according to the U.S. Copyright Office public record number V2156P508-510, had a date of execution of December 2, 1985 and a date of recordation at the U.S. Copyright Office on December 20, 1985.

14.     The term "1985 Vivan Evans Agreement" means the assignment from "Vivan Evans, Thomas Redd Evans, Jeffrey Redd Evans, Susan Redd Hansel & Nilene Redd Evans" to MSC of "American beauty rose & 66 other titles" which, according to the U.S. Copyright Office public record number V2156P522-531, had a date of execution of November 1, 1985 and a date of recordation at the U.S. Copyright Office on December 20, 1985.

15.     The term "1985 Redd Evans Agreement" means the assignment from "Redd Evans Music Company" to MSC of "American beauty rose & 82 other titles" which, according to the U.S. Copyright Office public record number V2156P498-507, had a date of execution of December 2, 1985 and a date of recordation at the U.S. Copyright Office on December 20, 1985.

16.     The term "Original Registration" means the United States initial copyright registration for the Composition, Registration Number EU 362-802, effective June 29, 1954.

17.     The term "Record of Original Registration" means the U.S. Copyright Office public catalog record of the facts stated in the Original Registration as shown in Exhibit A to Rubinstein's First Amended Complaint and located at ECF No. 25-1.

18.     The term "Renewal Registration" means the United States renewal copyright registration for the Composition, Registration Number RE 147-058.

19.      The term "Record of Renewal Registration" means the U.S. Copyright Office public catalog record of the facts stated for RE 147-058 as shown in Exhibit C to Rubinstein's First Amended Complaint and located at ECF No. 25-3.

20.     The term "Harry Fox" means the Harry Fox Agency, Inc. and includes its predecessors, successors, affiliates, subsidiaries, divisions, parents, and each other person directly or indirectly, wholly or in part, owned or controlled by it, and all present or former partners, principals, employees, officers, agents, legal representatives, consultants or other persons acting or purporting to act on its behalf.

21.     The term "Harry Fox Agreement" refers to the agreement attached as Exhibit D to Rubinstein's First Amended Complaint, located at ECF No. 25-4.

22.     Where a claim of privilege is asserted in objecting to these Interrogatories, MSC shall identify the nature of the privilege (including work product) that is being claimed, and the following information shall be provided in the objection:

    a.  the type of communication, e.g., letter or telephone conversation;

    b.  the general subject matter of the communication;

    c.  the date of the communication;

    d.  the author(s) of the communication;

    e.  the addressee(s) of the communication;

f.   the indicated and blind copy recipient(s) of the communication;

g.   the number of pages, attachments or appendices (if a document); and

h.   where not apparent, the relationship of the author(s), addressee(s) and recipient(s) of the communication to each other.

23.    In the event that any of these Interrogatories calls for the identification of a document that has been lost or destroyed, or for information contained in such a document, such document is to be identified by stating the following:

a.   the type of document, e.g., letter or memorandum;

b.   the general subject matter of the document;

c.   the date of the document;

d.   the author(s) of the document;

e.   the addressee(s) of the document;

f.   the recipient(s) of the document;

g.   where not apparent, the relationship of the author(s), addressee(s) and recipient(s) of the document to each other;

h.   the custodian(s) of the document or person(s) otherwise responsible for the document's safekeeping, storage, or filing;

i.   the date the document was lost or destroyed; and

j.   the circumstances surrounding the loss of the document and, if the document was destroyed, the reason for the circumstances surrounding its destruction.

24.     If MSC objects to the scope or breadth of any of these Interrogatories, MSC should identify, to the extent possible, that portion of the Interrogatory to which MSC will respond.

25.     These Interrogatories are continuing in character so as to require MSC to supplement its responses in accordance with Rule 26(e) of the Federal Rules of Civil Procedure within a reasonable time if it obtains or becomes aware of any further information responsive to these Interrogatories.  Rubinstein reserves the right to propound additional Interrogatories.

## INTERROGATORIES

INTERROGATORY NO. 11: State the factual basis for MSC's affirmative defense that the "claims asserted [by Rubinstein] are time barred by Section 507(b) of the Copyright Act."

INTERROGATORY NO. 12: State the factual basis for MSC's contention in Paragraph 1 of its Answer that "the Court has not subject matter jurisdiction of the claims asserted" by Rubinstein.

INTERROGATORY NO. 13: State the factual basis for MSC's contention in Paragraph 7 of its Answer that it owns all copyrights in the Composition in all territories outside the United States and Canada.

INTERROGATORY NO. 14: State the factual basis for MSC's contention in Paragraph 10 of its Answer that venue is improper because "copyright infringement" of Rubinstein's rights in the Composition did not occur in the Southern District of New York.

INTERROGATORY NO. 15: State the factual basis for MSC's contention in Paragraph 4 of its Answer (denying the allegation in Paragraph 41 of the First Amended Complaint) that it does not "infringe on Rubinstein's rights" and is not "still collecting monies on the Composition."

INTERROGATORY NO. 16: State the factual basis for MSC's contention in Paragraph 5 of its Answer (denying the allegation in Paragraph 50 of the First Amended Complaint) that Rubinstein does not own "registered rights in [the] United States renewal registration copyright number RE0000147058."

INTERROGATORY NO. 17: State the factual basis for MSC's contention in Paragraph 4 of its Answer (denying the allegation in Paragraph 51 of the First Amended Complaint) that it has not "knowingly, willfully, and intentionally infringed Rubinstein's exclusive rights under 17

U.S.C. § 106 through the unauthorized copying, licensing, reproduction, synchronization and/or distribution of the Composition" directly or by "its affiliates, subsidiaries, agents, owned/managed/controlled entities and/or parent company."

INTERROGATORY NO. 18: State the factual basis for MSC's contention in Paragraph 11 of its Answer that the following allegation in Paragraph 67 of the First Amended Complaint is irrelevant: Rubinstein and Darwin "never licensed the Composition to [MSC]. Specifically, [MSC] never entered into any type of license or other agreement with Rubinstein and/or [Darwin] that would authorize [MSC] to use, publish or distribute the Composition outside the United States after December 31, 1982."

INTERROGATORY NO. 19: For all royalties MSC received concerning the Composition on and after December 6, 2016, a list of the licenses from which such royalties were generated that identifies: (i) the licensor(s); (ii) the licensee(s); (iii) the type of use authorized (e.g., synch, reproduction, distribution, public performance); (iv) the territory of the use; (v) the duration of the use; and (vi) the royalty or other fee for the licensed use.

INTERROGATORY NO. 20: Describe in detail all actions taken by MSC on or after December 6, 2016 to request that third-party licensing organizations (including, but not limited to, ASCAP, BMI, Harry Fox, and PRS) remove any claim by MSC to the U.S. and/or Canada copyright in the musical composition aspect of the Composition.

INTERROGATORY NO. 21: Describe in detail the circumstances that led MSC to take the actions described in response to Interrogatory 20 to correct erroneous claims by MSC to the copyright in the Composition in the U.S. and Canada.

INTERROGATORY NO. 22: Describe in detail the steps MSC took on and after January 1, 2011 to investigate whether it owned any copyright concerning the Composition in the United States and outside the United States.

INTERROGATORY NO. 23:  Identify all legal entity and trade names under which You registered as a music publisher with Broadcast Music, Inc. in the United States between December 2, 1985 and August 31, 2020.

Dated: April 12, 2021                                    Respectfully submitted,


By: /s/ *Rachel E. Fertig*
     Rachel E. Fertig
     J. Kevin Fee
     MORGAN, LEWIS & BOCKIUS LLP
     1111 Pennsylvania Avenue NW
     Washington, DC 20004
     Telephone: 202-739-3000
     rachel.fertig@morganlewis.com
     kevin.fee@morganlewis.com

     Michael S. Kraut
     MORGAN, LEWIS & BOCKIUS LLP
     101 Park Avenue
     New York, NY 10178
     Telephone: 221-309-6000
     Michael.kraut@morganlewis.com

     *Counsel for Plaintiff Paulette Rubinstein*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 12, 2021, a true and accurate copy of the foregoing

document was served on counsel for Music Sales Corporation by emailing a copy to:

Timothy M. O'Donnell
odohmnail@aol.com

/s/ *Rachel E. Fertig*
Rachel E. Fertig